Annamalai Annamalai
AKA: Swamiji Sri Selvam Siddhar
**Permanent address**:
C/O A. Parvathi, Hariharan & co
243 Oppanakkara Street;
Coimbatore-641001-INDIA
E--mail: avtemple@aol.com
**Temporary mailing address:**
C/O Robert a Deyton Detention facility
11866 Hastings Bridge road,
P.O.Box-730; Lovejoy Georgia-30250

RECEIVED

MAY 10 2021

ALEXANDRIA DIVISION
US BANKRUPTCY COURT

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA

**In re:**

**Richard D. Fairbank**

**Debtor.**

**Case no: 16-1258 -BFK**

**Adversary case no.**

**Motion of Creditor Annamalai Annamalai, with "sworn affidavit" to request the court to vacate the final order/judgement from dismissing this action and reopen this case, "with" a request for oral argument and evidentiary hearing**

**Respectfully submitted to:**
**Honorable Brian F. Kenney**
**United States Bankruptcy Judge**

## I.    Introduction

Mr. Annamalai Annamalai (hereinafter "creditor"), is respectfully filing this motion/petition to request thus court to vacate its final order/judgment in dismissing this action, pursuant to Fed. R. Bankr. P. 9024 et seq, Federal rules of civil procedure 60(b) (5), or in alterative, pursuant to fed.R.Civi.P.60 (b) (6), or under Fed.R.Civil.P.60 (d) as an independent action. In support of the same, the creditor, humbly demonstrate as follows.

## II.      Preface

# "ONE WHO REBEL AGAINST "GOD" WILL BRING JUDGEMENT ON THEMSELVES"

Your Honor, the above stated phrase, was given to me, by God, one day in the early morning hours (when was in sleep). Several of the following facts, will be of historical events in the United States court's history, and also about an injustice done against a man of faith, about how ; the God has intervened to help his true slave! Further, the following matters will demonstrate about, how much some above the law [1] folks have taken the law in their hands, and have destroyed a man of faith, a man of color, and a Hindu High Priest, which is the creditor Annamalai, who deserves that, this action be reinstated, to give appropriate justice to the creditor Annamalai, which is pending for a long time.

## III.      Short background & Judicially established and adjudicated facts

1.      On or about mid of 2016, this action was initially filed at this court as an *"involuntary bankruptcy petition*, against the debtor Richard D. Fairbank. On or about 2017, this case was dismissed.

2.      The petitioner/Creditor, Annamalai also known as Swamiji Sri Selvam Siddhar[2] is a "Hindu High Priest". See: Generally **www.siddharpeedam.org**. The plaintiff is a most famous Indian American "High priest", who was granted legal status by the State department of the United States to work and live as a Hindu High Priest in the United States with his spouse and two children.

3.       The creditor is a man of great faith, maintained highest integrity all over his life, and stood as the first human and Indian American, in the United States History, who has "caused" to donate and contribute in "***billions of dollars***" for various public causes in all over his life.

---

[1] **No man in this country is so high that he is above the law**. No officer of the law may set that law of defiance with impunity. All the officers of the government from the highest to the lowest, are creatures of the law, and are bound to obey it. United States v. Lee, 106 U.S. (16 Otto) 196, 220, 1 S. Ct. 240, 261, 27 L. Ed. 171 (1882). See also Butz, 438 U.S. at 506, 98 S. Ct. at 2910.

[2] The Word "Siddhar" refers a highest Religious-spiritual recognition for a man of Hindu faith/a Hindu high priest. The word "Siddhar" directly refers about "slave of the God". Annamalai in fact was granted a "high Priest status" by the "state department of the United States", when Annamalai has legally immigrated to the United States.

4.     The creditor has co-founded, *six* Hindu Temples in the United States, inclusive of Hindu Temples in Georgia, California, Texas, and Ohio. Annamalai has been a "victim "of "*racial injustice*". Because Annamalai is a man of color, and the God blessed him with access to billions of dollars. Here, some 'above the law folks' in the U.S. Government, and also its "privies", like Mr. Richard Fairbank has "played " most reprehensible acts", inclusive of wrongful conviction of Annamalai, theft and misappropriation of trade secrets, intellectual properties worth over **40 Billion U.S. Dollars**, belonging to Annamalai and also in many properties and assets in which Annamalai has and possessory interests. *Those facts were already judicially established at the state court of Indiana at Vigo county superior court in the case no 84D02-1704-MI-2768 ( special judge Honorable Charles D. Bridges presiding).*

5.     As a part of victimizing Annamalai, some above the law folks and its privies of the debtor Fairbank, have "*manufactured the entire crime*" with the assistance of some corrupt persons, and convicted Annamalai for 34 counts. Notably plaintiff Annamalai was convicted for an alleged bank fraud of $11,854.00, (ELEVEN THOUSAND EIGHT HUNDRED AND FIFTY FOUR DOLLARS)[3] to which the prosecution has sought "*life imprisonment*" for Annamalai, who had *no* previous criminal records (even *speeding* – traffic tickets violations)").

6.     On or about **September 24, 2020**, twenty two (22)[4] counts of 34 counts of conviction[5] Annamalai was *vacated* by the eleventh circuit court of appeals, located in Atlanta, Georgia. *Now Annamalai is waiting for his so called resentencing.*[6]

---

[3] The fact of the matter is Annamalai is the first and only "human" going to face resentencing for bank fraud in the United states' history, even **after** the court came to know that, the *'financial institutions'* as allegedly defrauded by defendant Annamalai exists *nowhere* in the United states. **See**: the 'shocking conscious' express correspondences' came from the United States' governments arm "*FEDERAL DEPOSIT INSURANCE CORPORATIO*N" .( **See: Exhibit-2**)The FDIC has expressly affirmed as such '*none*" of the entities as shown in the indictment are "**FINANACAL ISTITUTIONS, inclusive of CAPITAL ONE SERVICES LLC ( See the fraudulent evidences caused to be filed ( a straightforward obstruction of justice)in the criminal case by Mr. Fairbank, the debtor in this case, which will speaks for itself Exhibit no(s) 4 & 5 )**. (This conviction is the landmark case of '**racial injustice**', corruption in the prosecution, and goes to the hearts of 'FRAUD UPON THE COURT. It appears that, the **privies** like Debtor- Richard D. Fairbank, to maximize their ill wealth, knowingly, intentionally, and in a *Pre mediated manner*, manufactured a non-existing crime, and in support of the same caused to file and repeatedly submit numerous 'FABRICATED EVIDENCES' to the trial court and also to the grand jury, petit jury See: **Exhibit -1, the pertinent portions of** the indictment of bank fraud. Further, the IRS Special agent at the "former sentencing" has testified under Oath, as such Annamalai did not even commit any fraud as "NO **EVIDENCE OF FRAUD**". **See: Exhibit-3.**

[4] Annamalai was convicted for "conspiracy to commit bankᵧᵤₚₜ꜀ᵧ fraud of ,$32,000.00 and money laundering of $32,000.00 and etc., The 11ᵗʰ circuit court of appeals, by throwing away the 22 counts of conviction, has issued a "**text book**' ruling of such vacature of the criminal conviction of Annamalai. Notably, Annamalai was the "**first**' **and the "only**" human indicted and convicted for bankᵧᵤₚₜ꜀ᵧ ꜰᵣₐwₐ

7.   In such periods' of times, various  Trade secrets[7] of Annamalai, inclusive of *over 17 million Annamalai's faithful devotees financial information and other identity, were, casually misappropriated, and has ended up with various persons, inclusive of debtor Fairbank.* Also, in such period, Annamalai in fact,  has possessed "billions of dollars" worth **"accounts receivables"  ( invoices)** from various persons, inclusive of Debtor Fairbank,

---

with a ( malicious & vexatious) theory as such, , Annamalai was working as a Hindu High priest for his *first temple*, which has sought for Chapter 11 bankruptcy protection, , when the lending bank in Georgia ( Duluth –Georgia )" Haven trust bank" was "belly up", which has forced the temple board members to file for chapter ll bankruptcy protection to save the real estates of the temple from malicious foreclosure by a Mafioso( Benny Hewett-Flowery Branch-Georgia ) who has bought the "performing" notes of the Temple at that time. (Annamalai was not allowed to buy back the promissory note at that time, being a so called insider).**See: Exhibit-6,** the pertinent portions of the 11th circuit' court of appeals ruling on thrown away bankruptcy fraud and money laundering convictions of Annamalai ~~Since, Annamalai went and worked as a High~~
[5] ~~Priest for, another temple, which  is constitutes  a  ~~ ~~bankruptcy fraud)~~ After the historical winning at the 11th circuit court of appeals, Annamalai in fact has now, moved the court for award of attorney fees and expenses to the tune of $630,500.00 against the prosecution. The same matter is pending at the 11th circuit court of appeals. Notably, even after several attempts to dismiss such appeal by the prosecution ( which was  taken as a  pro se appeal), the 11th circuit court of appeals, *sua sponte* has given a well experienced attorney to represent Annamalai at the Hyde amendment attorney fees appeal, and also has "ordered" the clerk of court to "set" such appeal at the "oral argument calendar" of that circuit court.( it's extremely rare to get an oral argument in the Hyde amendment attorney fees award at the 11th circuit. Under belief and information, so far only four of such actions ever went for oral arguments at the llth circuit) ~~See Case # 20-10543D –11th circuit court of Appeals)~~
[6] As judicially found and adjudicated, Mr. Richard D. Fairbank, the debtor in this action, has taken a lead role and also has caused Annamalai's wrongful convictions. Especially, for the so called bank fraud" to the tune of $11,864.00. (The insane part is that, when such an alleged bank fraud of $11,854.00 has occurred, Creditor Annamalai, in fact has **donated/contributed over $1, 4 billion U. S. Dollar to various social causes**. To wrongfully convict Annamalai for bank fraud, Mr. Richard Fairbank has caused to use "CAPITAL ONE SERVICES LLC", a " non-banking( non-financial ) entity, as if such entity is a bank/ ( financial institution, insured by FDIC), and has even caused to send  his representative to falsely testify as such the Capital one services LLC is/was a financial institution. **See: Exhibit-# 1-5.**
[7][T]he term "trade secret" means all forms and types of **financial, business,** scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing.

[7]   Under Indiana's Uniform Trade Secrets Act, Ind. Code Ch. 24-2-3 (IUTSA), the Uniform Trade Secrets Act as adopted by Indiana, a person who misappropriates the trade secrets of another is liable in damages for the actual loss and unjust enrichment caused by the misappropriation, or for a reasonable royalty if neither is provable. § 24-2-3-4(a), (b).

8.      Annamalai's efforts to get back billions of dollars' worth his trade secrets, intellectual properties from Debtor Fairbank and his privies, brought more harms then any good. Notably, Annamalai happened to be the "first Indian American" and a man of "Hindu Faith" was thrown at a "Muslim Terrorist cell", which being nick is named as **north Guantanamo Bay terrorist cell"**, [8] with the "blessings" of debtor Fairbank and also by his privies.

9.      Then Annamalai has wrote to all those individuals with an "invoice", who has misappropriated Annamalai and also his monastery's properties, to ask them to keep the stolen and misappropriated properties by them, and Annamalai ended up "invoiced" each one of such persons, inclusive of Richard D. Fairbank, who is the debtor to this action, for the "value" of the looted and misappropriated and stolen properties.

10.     When Annamalai was a resident of the state of Indiana and as well as "living" in Terre Haute Indiana  *(at the prison)*, he has, sold part of his *accounts receivables* to Vishal Kalyani under a binding contract.

*11.*     Kalyani failed to perform the contract terms of such agreement, which has caused Annamalai to file a civil complaint at the Vigo County superior court-Terre haute Indiana. The case no is Case number is **84D02-1704-MI-2768** (former case no was Case no. 84D03-1704-MI-2768).Take judicial notice of such facts under full ***faith credit clause of the U.S. Constitution.***

---

[8] Annamalai was placed between two "Muslim terrorists' cells (one at Terre haute-Indiana and the other one at Marion-Illinois" with the "Blessings & help" of debtor Fairbank and his privies. Annamalai in fact was tortured in "terrorist cell", which is under the control of a private BOP contractor at Marion Illinois and also sometimes at Terra haute Indiana. The **Muslim terrorist's cell** has housed approximately 29 inmates. Ninety percentages of those inmates are most dangerous and radicalized Muslim terrorist, caught from Pakistan, Syria, Iraq, Iran, Afghanistan, Albania, Nigeria, Sudan and etc. Those terrorist are the key operatives of various terrorist organizations', inclusive of Al-Qaeda, ISIS, Taliban's, Al-Shabaab etc., The terrorist cell also nick named as " North Guantanamo bay cell ".

Annamalai was repeatedly assaulted, battered, beaten, tortured, harassed, intimidated for over 5 years. The terrorist unit staffs' also was no help. Any complaint about such a brutal attacks by the Muslim terrorist on Annamalai has caused more harms and injuries, by Annamalai repeatedly locked up in a "hot chambers" ("sweat box") for months, a in the disguise of "protective custody". The "sweat box" is of 8 x 10 cells with over 130 degrees heat inside, with no air circulations, with a big motor runs outside the wall round the clock making horrible sounds so that Annamalai should not sleep (by sleep deprivation tortures) too. Annamalai in such a terrorist unit to get repeatedly assaulted and gets tortured for years. All has caused extreme and irreparable health and emotional injuries to Annamalai, and Annamalai is counting his days to death as we speaks, because of various chronic medical conditions he has endure via such a brutal placement in the terrorist cells. (***Annamalai is NOT of Muslim faith and or have no records of terrorism related acts in his entire life either.)*** The various tortures caused by the employees and the by the privies of the defendants to this action, has led to an injury in fact for the plaintiff.

12.     The Superior court of Vigo County has standing Local rule (Rule(s) LR-84TR26-7, LR-84-TR16-5) to 'immediately" *start discovery proceedings*. To respect court's "standing order", Annamalai has started his discovery inclusive of *request for admissions* ("RFA") served on various *account debtors, inclusive of Richard D. Fairbank, and also on his former counsels Mr. Douglas H. Foley, Sarah Beckett Boehm* and etc., (who had outstanding invoices to be settled) who are already have been judicially adjudicated as account debtors as well as party in privity to the Indiana court action, and also to its "final order of execution of "specific performance".[9]

13.     The patent failure in controverting RFA(s) lead to all the admissions served, were "*deemed admitted" pursuant to Indiana Trial Rule 36(b)*. Initially the Indiana case was dismissed without any foundation. After years of turmoil, and Annamalai was victorious at the *Indiana court of appeals*, when that case was unlawfully dismissed with the 'blessing' and "ex parte communications" by some of the "party in privity" to that action, inclusive of some members' and employees of Debtor Fairbank.

14.     The chief judge of the Indiana court, has "*voluntarily recused herself*" after Annamalai's victorious appeal from the Indiana court of appeals, which has ordered the trial court to "reopen" the action.

15.     Latter, Annamalai was appointed with a **special judge** ( *Honorable Charles D. Bridges*) to manage such action at Indiana. See: Exhibit – 6-1

16.     On or about 01/13/2020, an Indiana's Special Judge Charles D, Bridges, has entered a final judgment to the favor of Annamalai, by granting "**all of the reliefs** as sought by Annamalai.

17.     Then Annamalai has moved to collect the final judgement against debtor Fairbank and other parties, which did not yield any proper response.

18.     On or about October 2020, Annamalai has moved the state court for the post judgement actions, for the "execution" of his judgement, pursuant to **Indiana trial rule 69(e).** On or about **November 09th 2021**, the trial judge of the Indiana court has granted Annamalai's request to "*Execute* " the final judgement( an **EQUITABLE ORDER OF "SPECIFIC**

---

[9] **MAXIM**
"He who consents to what is done cannot complain of it" (Volenti non fit injuria).No right of action accrues to a person who agreed to what was done, even though it injured him.

"The Maxims have an interest probative force, and need not to be proved"

"The party who is deemed to have waived his right to object has no just caused to complain of this rule of the court.
The courts enforce MAXIM." Equity aids the vigilant.

**PERFORMANCE**" ) against 'all" of Annamalai's account debtors'/ party in privity,[10] inclusive of Debtor Fairbank.[11]

19.      **As per the "final order" of the Indiana court's "Order of "SPECIFIC PERFORMANCE", the debtor Fairbank, now, is judicially obligated to "specifically perform" the following acts, immediately for the creditor Annamalai.**

(i). Debtor Fairbank, to pay off, immediately, several outstanding and long pending "**unpaid**" "invoice amount(s) totaling of **$9.375 Billion** U. S. Dollar, (with additional late interests) to be settled by debtor Fairbank. (See: **Exhibit no(s) 8 & 9),** which are expressly reincorporated herein by reference.

(ii). Debtor Fairbank, **shall** immediately help Annamalai with all the necessary acts to reinstate Annamalai's immigration status well, for Annamalai and also for Annamalai's immediate family members.

(iii). Debtor Fairbank, shall buy a home for creditor Annamalai, with a minimum appraisal value of $10 million dollars.

(iv). Debtor Fairbank shall hire a well experienced and competent criminal counsel for Annamalai to handle Annamalai's pending criminal case matters in full.

---

[10] One **party is a privy** of another where there is a mutual or successive relationship to the same right. Privity connotes those who are in law so connected with a party to the judgment as to have such an identity of interest that the party to the judgment represented the same legal right; and where this identity is found to exist .Gerald Fred WEBB V. William P. ETHRIDGE, 849 F2d 546849 F.2d 546 ;( 11th Cir 1988)

[11] The Final order of "**Execution**" which was entered on 11/09/202, expressly states as follows. See: **Exhibit** 7

"The court finds for the plaintiff for to **execute** the Final judgment, The account debtors, who have already admitted as "party in privity", pursuant to Indiana trial Rule 36(b), **SHALL specifically perform** all the acts as per their respective admissions, at this proceeding.

**ALL OF WHICH IS ORDERED** BY THE COURT, THIS 09TH DAY OF November 2020".

## IV.    <u>Arguments :-</u>

### A. <u>This case warrants to be reopened pursuant to Federal rules of Civil procedure 60(b)(5), because applying it prospectively is no longer equitable, as a matter of law & also to prevent fundamental miscarriage of justice</u>

20. The Fed.R.Civi.P.60(b)(5), in pertinent part states as follows:

> *Rule 60. Relief from a Judgment or Order*
>
> *(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:*
>
> *(5) the judgment ... ... ... ... ... or applying it prospectively is no longer equitable;*

21.    At this time, the *applying of this court's earlier, final order dismissing this action is <u>no longer equitable,</u>* since the Indiana court in fact 'under its Post judgement action proceedings' under Indian trial rue 69 ( e ),  has granted the creditor Annamalai's request to "<u>execute</u>" the judgment against all of Annamalai's 'account <u>debtors</u>' and party in privity(s), inclusive of debtor Fairbank. Notably the present "equitable order" of "SPECIFIC PERORMANCE" ordered by the Indiana court, which has already and as well as judicially has adjudicated as, Debtor Fairbank as the account debtor and as well as the party in privity to that judgement / action per se.

### B. <u>The creditor requests this court to give "full faith credit" for the Indiana state's court's "Final order" of " Specific Performance"</u>

22.    Annamalai is also invoking the doctrines of Res Judicata and Rooker- Fedlman doctrine in support of his claims against the debtor Fairbank at this time. *The Rooker-Feldman doctrine [12] precludes federal district courts from exercising appellate jurisdiction over a state court's final judgment in a judicial proceeding.*

---

[12] Here, whether discovery issues were properly resolved, whether motions to execute the judgement, were ruled upon "correctly," or whether the Indiana judge Charles D. Bridges made a procedural errors, or exceeded his authority, would each "in substance" require <u>**review**</u> of the state court judgement, which are precluded by the doctrine of Rooker-Feldman pe*r* se..

23.    *To avoid any prejudice or confusion, let Annamalai be very and expressly clear that, he is* ***NOT*** *asking this court to "****REVIEW****" the state court's equitable order of specific performance. All he seeks this court, is to* ***VIEW****" such order. And give full faith credit.*[13]

24.    The Constitution provides that full faith and credit shall be given to judicial proceedings in other states and empowers Congress to develop procedures that govern the enforcement of judgments. U.S. Const. art. IV, 1. Pursuant to this constitutional provision, federal courts have the statutory duty to give full faith and credit to any duly authenticated judgments of courts of any "State, Territory or Possession" of the United States. 28 U.S.C. 1738; *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984) ("a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered"). The Full Faith and Credit Act, 28 U.S.C. § 1738, "requires federal courts to give the same preclusive effect to a state-court judgment as another court of that state would give." Donham v. Walters (In re Walters), Adv. No. 10-93, 2011 Bankr. LEXIS 2147, 2011 WL 22246166, at *2 (Bankr. N.D.W. Va. June 7, 2011) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 293, 125 S. Ct. 1517, 161 L. Ed. 2d 454 (2005)).

25.    "The courts of the United States are bound to give to the judgments of the state courts the same faith and credit that the courts of one state are bound to give to the judgments of the courts of her sister states. A statute is a public act within the meaning of the full faith and credit clause". "Congress has not vested in the court of bankruptcy any right to sit as a court of review of a final judgment obtained in a state court fixing property rights".

26.    "Pursuant to 28 U.S.C.S. 1738, federal courts must give full faith and credit to state court judgments. Additionally, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so". Gilliam v. Sealey, 2020 U.S. App. LEXIS 6728 (4th Cir. 2020)." Neither a state nor a federal court can refuse to give full faith nor may credit to the judgment of a state court because of disagreement with the public policy basis for that decision, courts refuse to recognize a foreign judgment on the ground that it conflicts with the public policy of the state". In re BORGELT (two cases) District Court, S.D. Illinois, N.D , 10 F Supp 11310 F. Supp. 113; 1935 US Dist. LEXIS 16371935 U.S. Dist. LEXIS 1637.

27.    **Full faith and credit to foreign judgment is not denied where defendant was no party to such judgment, and there is nothing in Constitution to give it any force as against strangers**. Bagley v. General Fire Extinguisher Co., 212 U.S. 477, 29 S. Ct. 341, 53 L. Ed.

---

[13] Just as a quick note, to avoid any possible forthcoming frivolous arguments by the debtor Fairbank to attack the state court's equitable order of specific performance, Annamalai would like to humbly state the following. In the context of Rooker-Feldman doctrine, this bankruptcy claim is **inextricably intertwined** with the state-court's *final order of specific performance*, and such order cannot be vacated by this court or attacked by the debtor at this court. Pursuant to  28 U.S.C. 1257, and also under Rooker-Feldman doctrine.

605 (1909). Where judgment is conclusive between parties in state where rendered, it is **also conclusive in all other courts in United States**. Christmas v. Russell, 72 U.S. 290, 18 L. Ed. 475 (1866).

28. Under **full faith and credit**        ، preclusive effects of adjudication—that is, claim preclusion and issue preclusion (res judicata and collateral estoppel)—on parties and those in **privity** with parties do not differ depending solely on type of relief sought in civil action, as equity decrees for payment of money have long been considered equivalent to judgments at law entitled to nationwide recognition. Baker v. GMC, 522 U.S. 222, 118 S. Ct. 657, 139 L. Ed. 2d 580, 11 Fla. L. Weekly Fed. S 289, 98 Cal. Daily Op. Service 282, 1998 Colo. J. C.A.R. 163, 98 D.A.R. 383 (1998). Constitutional mandate requires credit to be given to money judgment rendered in civil cause of action in another state, even though forum would have been under no duty to entertain suit upon which judgment was founded. Titus v. Wallick, 306 U.S. 282, 59 S. Ct. 557, 83 L. Ed. 653 (1939). Judgment by confession made by defendant or by someone acting under warrant of attorney is entitled to same faith and credit in other states as it has in state wherein it was entered. Egley v. T. B. Bennett & Co., 196 Ind. 50, 145 N.E. 830 (Ind. 1924).

## C.    As an alternative, this case be reopened and the final order of dismissal, please be vacated, pursuant to  Federal rules of Civil procedure 60(b)(6), under "extraordinary" circumstances standard and also to prevent fundamental miscarriage of justice

29. Fed. R. Civ. P. 60(b) (6) provides that a court may relieve a party from judgment for *any other reason justifying relief from the operation of the judgment.* Fed. R. Civ. P. 60(b) (6). The rule has been described as the catch-all clause because it provides the court with a grand reservoir of equitable power to do justice in particular cases and vests power in courts adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice where relief might not be available under any other clause in Fed. R. Civ. P. 60(b).

30. Notably, and respectfully Annamalai say that, "without any debate, the facts as demonstrated and the matters surrounding this case, makes this case as an *"unique" "extraordinary" case*, not only at this court, in fact any courts of the United states. Because, not even a single judge of the United states, have,  ever encountered a case with these much magnitude  of shocking conscious, and god's interventions historical events, where which an innocent man of faith a Hindu high Priest, was  taken for a 'free ride" by some powerful folks, who has friends in high places , like the debtor Fairbank. In support of such vacature under Fed.R.Civil.P.60 (b) (6), Annamalai simply reincorporate the above stated items (1- *27*) by reference, as if they are restated, fully herein.

### D. **Or as an alternative, this case be reopened and the final order of dismissal, please be vacated, pursuant to Federal rules of Civil procedure 60(d)(1), to entertain an independent action to relieve Annamalai, from a judgment, order, or proceeding and also to prevent fundamental miscarriage of justice**

31. This Court should grant equitable relief for Annamalai as an alternative, pursuant to Federal Rule of Civil Procedure 60(d) (1) to relieve him from the prior final orders. Annamalai respectfully and humbly say that, the *independent action* for equitable relief under 60(d) (1) is warranted here, since the "Indiana court's Final and **equitable order** of "**specific performance**", to be rendered by the account debtor & party in privity- the debtor Richard D. Fairbank is **a new evidence which is s likely to produce an new outcome, if the case is retried.** "An independent action in equity is usually "a new case-in the same court or another court possessing jurisdiction." Field v. GMAC LLC, 2:08cv294, 2009 U.S. Dist. LEXIS 127533, 2009 WL 6560222, at *1, *5 (E.D. Va. Jan. 30, 2009), aff'd, 328 F. App'x 873 (4th Cir. 2009). In support of this claim, Annamalai, fully reincorporates, the item(s) No 1-27 above, as if they are fully restated herein by reference.

### E. **As a final note, the doctrine of "Res judicata" also supports the vacature of the final order of dismissal, under Fed.R.Civi.P.60 (b) (5) or (6) or under 60(d).**

32. "It is well-established that the doctrine of res judicata applies in the bankruptcy context. Brown v. Felsen, 442 U.S. 127, 132, 99 S. Ct. 2205, 60 L. Ed. 2d 767 (1979)." The doctrine of res judicata bars subsequent suits involving claims that have already been reduced to judgments and represents society's interest in the finality of judgments. It is designed to prevent a litigant from raising any issues which were adjudicated in the former suit and any issues which might have been raised in the former suit. . The preclusion doctrine encompasses two strands: res judicata and collateral estoppel. Res judicata, or claim preclusion, bars relitigation of claims that were or could have been raised in a prior proceeding between the same parties. Collateral estoppel, or issue preclusion, bars the relitigation of specific issues that were actually determined in a prior action. Both are estoppel doctrines, but they have differing preclusive effects in bankruptcy discharge ability litigation. In determining whether the preclusion doctrine applies, federal courts are required to refer to the preclusion law of the state in which the judgment was rendered". Voss v. Pujdak (In re Pujdak), 2011 Bankr. LEXIS 436 (Bankr. D.S.C., Feb. 10, 2011).

"Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties." Sartin v. Macik, 535 F.3d 284, 287 (4th Cir. 2008).

33. " A "*bona fide dispute*" within the meaning of 11 U.S.C.S. § 303(b) exists only when there are substantial factual or legal questions that bear upon the debtor's liability; that it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to judgments. **A debtor cannot collaterally attack final judgments and is collaterally estopped from doing so under the principal of res judicata**"". An alleged debtor's subjective beliefs do not give rise to a "bona fide dispute" within the meaning of 11 U.S.C.S. § 303(b). Rather the alleged debtor must demonstrate the existence of a bona fide dispute by offering evidence in support of his contention and cannot defeat a petitioner's standing to file an involuntary petition by refusing to concede the validity of the petitioner's claim without presenting any evidence to support his factual and legal arguments." "The Court of appeals as held in In re Byrd, 357 F.3d 433 (4th Cir. 2004) that a bona fide dispute exists only when there are substantial factual or legal questions that bear upon the debtor's liability and that it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to judgments. The Debtor cannot collaterally attack final judgments and is collaterally estopped from doing so under the principal of res judicata. This Court must give preclusive effect to the judgments of M&I Equipment Finance Company, People's Capital and Leasing Corporation, and US Bank, NA, regarding the amount and validity of their claims pursuant to 28 U.S.C. § 1738, precluding the Debtor from now disputing the debt". IN RE: WILLIAM L. STEIN, Debtor, 2011 Bankr LEXIS 862011 Bankr. LEXIS 86 Case No. 10-8017, Chapter 7. In support of this claim, Annamalai, fully and expressly reincorporates, item numbers 1-27, above herein, as if they are fully restated, by reference.

## V.   **Relief Sought**

Wherefore Annamalai the creditor, humbly request the court to vacate its earlier order of dismissal of the main and as well as the adversary bankruptcy case to move forward, with the award in full to Annamalai's favor as sought in his initial involuntary bankruptcy petition as sought, with any more reliefs also be granted towards Annamalai, which are not expressly sought herein in Equity.

Respectfully submitted this day of April ___21ˢᵗ___ 2021

Annamalai Annamalai
P.O.Box-730
Lovejoy, Georgia -30250

## VI.    Certificate of service

Annamalai certifies that, this document is caused to be mailed to this court, to the debtor, Richard D. Fairbank @ 1680 capital one drive Mclean, Virginia-22101-3491, and also office of the U.S. Trustee at 115 South Union Street, Alexandria, Virginia 22314, via first class mail, postage being prepaid.

Executed on: April ___21ˢᵗ___ 2021.

Annamalai Annamalai
P.O.Box-730; Lovejoy, Georgia -30250

## VII.    Certification

I, Annamalai Annamalai declare under penalty of perjury that:

(1) No attorney has prepared, or assisted in the preparation of this document.

Annamalai Annamalai
_____
Name of the Pro se party

_____
Signature of the pro se party

Executed on: April ___21ˢᵗ___ , 2021.

## VIII. Affidavit of Annamalai Annamalai

**STATES OF GEORGIA**

**COUNTY OF CLAYTON**

COMES NOW, Annamalai Annamalai, under **OATH**, and does **SWEAR** and **AFFIRM** as follows.

1. I am the age of 55, and competent to testify to the matters set forth herein.
2. I state that, I have either personal knowledge and/or first-hand knowledge of the matters set forth in my complaint as attached herewith. All the matters as set forth are true, except as to matters as stated on information and belief and as to those, I believe them be true.
3. The enclosed **Evidences** with the underlying complaint are all of **true copies** of the records, to which I have personal knowledge.
4. All the matters as stated in the enclosed complaint is, all **True and nothing but true**.

**FURTHER AFFIANT SAYETH NAUGHT.**

_____
**Annamalai Annamalai**
**Affiant**

**Sworn to and subscribed before me**

**this** 2/ **day of April, 2021.**

_____
**[Notary public]**

**SEAL**

**Counts Two Through Eight**
**(Bank Fraud)**
ANNAMALAI ANNAMALAI
KUMAR CHINNATHAMBI

12.  The factual allegations contained in paragraphs 2 through 11 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

13.  On or about the dates set forth below, in the Northern District of Georgia, defendants ANNAMALAI ANNAMALAI and KUMAR CHINNATHAMBI, aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute a scheme and artifice to defraud financial institutions insured by the Federal Deposit Insurance Corporation, and to obtain moneys, funds and credits owned by and under the custody or control of financial institutions insured by the Federal Deposit Insurance Corporation, by means of materially false and fraudulent pretenses, representations and promises, and by the omission of material facts, caused the following charges to be drawn on the financial institutions identified below:

| COUNT | DATE | FOLLOWER (INITIALS) | UNAUTHORIZED CHARGE | FINANCIAL INSTITUTION |
|-------|------|---------------------|---------------------|------------------------|
| 2 | 07/03/2008 | T.L. | $1,751.00 | AMERICAN EXPRESS |
| 3 | 09/24/2008 | P.P. | $1,001.00 | DISCOVER |
| 4 | 10/20/2008 | P.P. | $1,101.00 | DISCOVER |
| 5 | 12/26/2008 | S.P. | $1,401.00 | CAPITAL ONE |
| 6 | 01/02/2009 | S.P. | $1,401.00 | CAPITAL ONE |
| 7 | 01/10/2009 | S.P. | $1,401.00 | CAPITAL ONE |
| 8 | 04/19/2009 | B.V. | $2,201.00 | AMERICAN EXPRESS |

Exhibit — 002

All in violation of Title 18, United States Code, Sections 1344 and 2.

# FDIC

**Federal Deposit Insurance Corporation**
550 17th Street, NW, Washington, DC 20429-9990                              Legal Division

March 25, 2019

Annamalai Annamalai
Reg. ID # 56820-379
USP - MARION
P.O.Box-1000
Marion, IL 62959

### FDIC FOIA Log Number 19-0143

Dear Annamalai Annamalai:

This will respond to your letter dated March 7, 2019, which we are processing pursuant to the provisions of the Freedom of Information Act ("FOIA"), 5 U.S.C. §552. In your letter, you ask the following:

> Request you to provide me with the "status" of the following business entities about whether they are FDIC insured financial institutions or not? I have given the "exact names " of those entities as follows:

Merchant Warehouse/Merchant Warehouse Inc.
Discover Financial Services Inc.
Capital One Financial Services LLC
American Express Merchant Services
Discover
American Express
Capital One
Micamp Merchant Services Inc., /Micamp Merchant Services
Merchant Services/Merchant Services Inc.
Bankcard Merchant Services Inc./Bancard Merchant Services
Elavon Merchant Services Inc., Elavon

The FOIA does not require that an agency conduct research, answer questions, or provide information that has already been made publicly-available on our website. As a one-time courtesy, however, I provide the following information.

The FDIC is a regulator and an insurer of deposits at the nation's financial institutions. None of the entities you list are FDIC-insured financial institutions. Therefore, the FDIC would not have agency records under its custody or control relating to these entities.

Exhibit - 002

Evidence no. 002

Since your request does not seek access to FDIC agency records, it cannot be processed further, and we are administratively closing our file on your request. I trust you will find this information helpful.

Sincerely,

*Lisa M. Snider*

Lisa M. Snider
Government Information Specialist
FOIA/Privacy Act Group, Legal Division

DCS-00083

NOTE: AT SENTENCING

Government's "STAR WITNESS" MR. Stephan Lanzamardeis

"EXPLOSIVE TESTIMONY" AT "SENTENCING" of Annamalai

AS "NO EVIDENCE OF FRAUD"

13                                                                                    41

ess the bank

e government

less than an

s reviewed all

and they total

hey would

files have with

ed at trial.

rom about eight

ilar stories

ctions with the

the

t card company,

cluding, there

d mail

ted over and

mail receipts

approximately

er to you,

**Exhibit -**
**DCS-00108    evidence # 83**

1   AMAZON WOULD SHOW, LOOK, THE PRODUCT WAS SHIPPED, HERE IS

2   THE SHIPPING LABEL.

3   A.  CORRECT.

4   Q.  BUT YOU ASSUME THAT EVERY SINGLE PERSON FOR WHOM THERE

5   WAS AN INVOICE, A MAIL RECEIPT, OR A LETTER WAS DEFRAUDED.

6   EVERY ONE.

7   A.  I WON'T SAY DEFRAUDED.  THEIR PATTERN MATCHED THAT OF

8   WHAT WAS PROVEN DURING TRIAL.

9   Q.  SO YOU AGREE THERE IS NOT EVIDENCE OF FRAUD WITH THE 55,

10  IT IS JUST THESE PEOPLE HAD DISAGREEMENTS WITH THE CREDIT

11  CARD COMPANY AND THEY HAD THE TYPICAL PAPERWORK IN IT THAT

12  YOU WOULD FIND FROM ANY DISPUTE.  CORRECT?

13  A.  CORRECT.

14  Q.  WELL, LET ME ASK YOU TO KIND OF EMPHASIZE THAT FOR ME.

15  YOU WOULD AGREE WITH ME THAT WE CAN'T IDENTIFY THOSE 55

16  PEOPLE AS BEING DEFRAUDED?

17  A.  RIGHT.

18  Q.  NOW, THE NEXT STEP IS TO GET FROM THOSE 55 UP TO THE

19  MUCH LARGER NUMBER, NOT OF VICTIMS, BUT OF MONEY, WHICH IS

20  THE 536,000; CORRECT?

21  A.  CORRECT.

22  Q.  SO AGAIN, WE STARTED WITH EIGHT, THE EIGHT PEOPLE

23  TESTIFIED -- SAY "YES" OR "NO"

United States V. Annamalai ( 1:130cr-437-TCB-CMS ) Testimony of Mr. Stephen
Langamandel ( IRS Special Agent ) given at sentencing of Annamalai
about the FRaud and Fraud loss!! ( See lines 4 to 17 especially ).

```
 1    AMAZON WOULD SHOW, LOOK, THE PRODUCT WAS SHIPPED, HERE IS
 2    THE SHIPPING LABEL.
 3    A.   CORRECT.
 4    Q.   BUT YOU ASSUME THAT EVERY SINGLE PERSON FOR WHOM THERE
 5    WAS AN INVOICE, A MAIL RECEIPT, OR A LETTER WAS DEFRAUDED.
 6    EVERY ONE.
 7    A.   I WON'T SAY DEFRAUDED.   THEIR PATTERN MATCHED THAT OF
 8    WHAT WAS PROVEN DURING TRIAL.
 9    Q.   SO YOU AGREE THERE IS NOT EVIDENCE OF FRAUD WITH THE 55,
10    IT IS JUST THESE PEOPLE HAD DISAGREEMENTS WITH THE CREDIT
11    CARD COMPANY AND THEY HAD THE TYPICAL PAPERWORK IN IT THAT
12    YOU WOULD FIND FROM ANY DISPUTE.   CORRECT?
13    A.   CORRECT.
14    Q.   WELL, LET ME ASK YOU TO KIND OF EMPHASIZE THAT FOR ME.
15    YOU WOULD AGREE WITH ME THAT WE CAN'T IDENTIFY THOSE 55
16    PEOPLE AS BEING DEFRAUDED?
17    A.   RIGHT.
18    Q.   NOW, THE NEXT STEP IS TO GET FROM THOSE 55 UP TO THE
19    MUCH LARGER NUMBER, NOT OF VICTIMS, BUT OF MONEY, WHICH IS
20    THE 536,000; CORRECT?
21    A.   CORRECT.
22    Q.   SO AGAIN, WE STARTED WITH EIGHT, THE EIGHT PEOPLE WHO
23    TESTIFIED -- SAY "YES" OR "NO" PLEASE.
24    A.   YES.
25    Q.   WE EXPANDED THAT TO 55 PEOPLE WHO HAD CHARACTERISTIC
```

U.S. DISTRICT COURT
LORI BURGESS, RMR

-18-

EXhibit #3



**Capital One®**

Capital One Services
PO Box 30285
Salt Lake City, UT 84130-0285

Name Seema A Patel
Account Number 4003447009975444

Please provide the following information:

Date of the transaction: 12/26/08 , 01/2/2009 ; 1/10/2009

Specific transaction and amount you are disputing (see your statement for details):
$1401.00 charged on 12/26/08, $1401.00 charged on 1/2/09 and $1401.00 charged on 1/10/09

Name and location of the merchant who charged you: Hindu Temple of Georgia, GA

This transaction took place: ___ by phone ___ over the Internet ___ in person

Describe why you believe you should not be charged: Services not rendered and not requested.

Describe the merchandise you purchased: Nothing was purchased.

12/30/08
1/5/09
1/6/09
1/9/09
1/12/09

Describe what you actually received: Marketing material (Monthly magazine) received on 1-20-09.

How many attempts did the merchant make to correct the problem? None

Dates you contacted the merchant about the error: Yes, several times 12/30/08, 1/5k

Date you requested a credit: Yes several times → 1/6/09, 1/9/09,

Did you offer to return the merchandise? X yes ___ no (If not, please do so.)   1/12/09, 1/18/09

Summarize the merchant's response: Not willing to refund money   1/18/09
Please see attached documents evidencing same

If you're unable to provide any of the previous information, please explain why: type of fraud committed.

2273     © 2009 Capital One Services, LLC. Capital One is a federally registered service mark. All rights reserved.

Credit card
Please visit all websites for proof of fraud



Evidence #004
DCS-00093
Exhibit #004

GOVERNMENT EXHIBIT
217
1:13-CR-457-TCB

**Capital One**

Capital One Services
PO Box 30285
Salt Lake City, UT 84130-0285

Signature of <Primary Cardholder>

To help support your case, please provide copies of the following:

- Your signed sales receipt, if the charge took place in person
- Dated return receipts or proof of return (If you have not already returned the merchandise, please do so.)
- The merchant's Purchase Agreement
- Any additional documentation you think we may need

**Please return this completed form and relevant documentation by 03/25/2009. Fax them to us at 1-888-435-4217. You can also return them:**

Capital One
P.O. Box 30279
Salt Lake City, UT 84130

© 2009 Capital One Services, LLC. Capital One is a federally registered service mark. All rights reserved.

DCS-00094

**Capital One**

PO Box 30279
Salt Lake City, UT 84130-0279

May 13, 2009

Seema A Patel
1530 Delle Dr
Hoffman Estates, IL 60169-6959

Re: 4003447009975444

Dear Seema A Patel:

We have new information about the disputed charge on your Capital One® account.

On your April 2009 statement, we credited your account for $1401.00 x3. However, the merchant did resubmit the charge along with supporting documentation, which we have enclosed for your review. Based on this evidence, unfortunately, we must re-bill the charge to your account. This adjustment will appear on your next monthly statement.

Unless you can provide a signed updated letter by 05/19/2009, we will consider the case closed.

- The reason the merchandise was returned.
- Copy or description of the merchant's cancellation/return policy along with a statement from you advising whether or not the cancellation/return policy was disclosed to you at the time of sale.
- A copy of your receipt, showing proof of return.
- A copy of the merchant's return policy.
- A copy of any documentation you may have to support your claim (ex. Receipt from postal service showing delivery confirmation.).
- Please describe the merchandise or service ordered.
- Please describe the merchandise or service received and how it was different then ordered.
- Provide a copy of what you expected to receive.
- Provide a copy of what was received or a signed second opinion on company letterhead from a third party stating that the product did not work as advertised.
- Provide a copy of a credit receipt or letter from the merchant stating credit will be issued.
- Please also state the value of the services received if any and the value of the merchandise received.

For your convenience, you can fax or mail the information. If you choose to send a fax, our fax number is 1-866-927-7872. If you choose to write in, the address to use is:

Capital One

DCS-00095

Evidence-21

GOVERNMENT
EXHIBIT
220
1:13-CR-49-SCB

SP-00005

---

**Capital One**

PO Box 30279
Salt Lake City, UT 84130-0279

ATTN: Repre Response
PO Box 31275
Salt Lake City, UT 84130

If you have questions, please give us a call at 1-800-887-8643. Our Customer Service Representatives are available from 7am to midnight Eastern Time, Monday through Friday, and from 8am to 7pm Eastern Time on Saturday.

Sincerely,

Capital One Services, LLC.

Enclosed: Copy of merchant rebuttal

©2009 Capital One  Capital One is a federally registered service mark. All rights reserved.

4087

DCS-00096

SP-00006

Appeal Ca ~~Document 5  Page 23~~

United States V. Annamalai [11th Circuit Court of Appeals]

"Count 10 charged Mr. Annamalai with conspiracy to commit bankruptcy fraud in violation of 18 U.S.C. § 371. Counts 11-20 charged him with substantive {2019 U.S. App. LEXIS 14} bankruptcy fraud in violation of 18 U.S.C. § 152(1), which prohibits knowingly and fraudulently concealing from a Chapter 11 bankruptcy trustee "any property belonging to the estate of a debtor."

All of the substantive bankruptcy fraud charges were based on funds that the Shiva Vishnu Temple acquired or received after the Hindu Temple filed for bankruptcy in August of 2009 and after the trustee shut it down in early November of 2009. Counts 11-14 and 16-20 concerned credit card receivables for transactions spanning from November 25, 2009, to October 25, {939 F.3d 1226} 2010. An illustrative example is Count 20, which was based on credit card receivables of $2,428.42 that the Shiva Vishnu Temple received through American Express on October 25, 2010. Count 15 was different; it concerned a donation check for $3,000 made out to the Hindu Temple in January of 2010 and deposited into the Shiva Vishnu Temple bank account.

Mr. Annamalai argues that the government failed to introduce sufficient evidence to support his convictions on Counts 10-20. See Appellant's Br. at 38. The district court acknowledged that the matter was "close," D.E. 389 at 1792, but denied the Rule 29 motion for judgment of acquittal. See D.E. 390 at 2071-72; D.E.{2019 U.S. App. LEXIS 15} 256 at 3-4.

Exercising de novo review, and viewing the evidence "in the light most favorable to the government," United States v. Robertson, 493 F.3d 1322, 1329 (11th Cir. 2007), we agree with Mr. Annamalai that the new income generated by the Shiva Vishnu Temple, for post-bankruptcy religious or spiritual services provided to and paid for by followers, did not constitute property of the bankruptcy estate of the Hindu Temple. We also agree with him that the post-petition donation check made out to the Hindu Temple did not constitute property of the estate. And because the conspiracy charge was based only on the conduct set out in the substantive bankruptcy fraud counts, we reverse the conspiracy conviction as well.

A

We begin by summarizing the evidence presented by the government on the bankruptcy fraud charges.

Immediately following his appointment on November 4, 2009, the trustee closed the Hindu Temple, shut its doors, and did not conduct any further business on its behalf. See D.E. 386 at 1182, 1185-86, 1201-03, 1206-07. The trustee acknowledged at trial that Mr. Annamalai-who was not the organizational debtor-was permitted to open a new temple after the Hindu Temple filed for bankruptcy. See id. at 1203-06, 1211-12. So did the IRS investigator who testified for the{2019 U.S. App. LEXIS 16} government. See id. at 1144.

Less than a week after the trustee was appointed, Mr. Annamalai incorporated and registered a new entity called the Shiva Vishnu Temple. The physical address for the Shiva Vishnu Temple was a different location in Norcross, Georgia-a house owned by Mr. Annamalai-but the mailing address and the e-mail

Page no____1____

Exhibit #6


RESPONDENT'S EXHIBIT
6

address apparently remained the same. See id. at 1095-96, 1152. After the Shiva Vishnu Temple was

registered with Georgia's secretary of state, it unsuccessfully sought to transfer a merchant account that the Hindu Temple had with Global Pay/Power Pay. See id. at 1105-06.

In magazines distributed after the Hindu Temple filed for bankruptcy, advertisements stated that the Shiva Vishnu Temple was "also known as the Hindu Temple of Georgia" and included Mr. Annamalai in photographs. See id. at 1102-04. According to the IRS investigator, the Hindu Temple and the Shiva Vishnu Temple were "the same business." Id. at 1104.

On November 12, 2009, three days following its incorporation, the Shiva Vishnu Temple opened a new bank account at Bank of America, with Mr. Annamalai listed as one of the authorized signers. See id. at 1109. After this account was opened, the merchant accounts that the Hindu Temple had with American Express and with Elavon were{2019 U.S. App. LEXIS 17} changed to the name of the Shiva Vishnu Temple and the Bank of America account replaced the bank account previously on file. This ensured that any future credit card receivables from these merchant accounts would be deposited in the {939 F.3d 1227} Bank of America account. See id. at 1110-13, 1126-27, 1143-44. A week or so later, on November 20, 2009, the Shiva Vishnu Temple opened a new merchant account with Global Pay. See id. at 1120.

The trustee maintained at trial that the bankruptcy estate of the Hindu Temple included its merchant accounts, as well as all post-bankruptcy receivables that ran through those accounts (even if they were routed to the new bank account of the Shiva Vishnu Temple). See id. at 1185-87, 1219-20. His explanation for this legal conclusion was that "[a]ssets coming into the bankruptcy entity become property of the estate." Id. at 1188. The trustee testified that Mr. Annamalai had to obtain his permission to use the merchant accounts belonging to the Hindu Temple, and that Mr. Annamalai did not do so when he changed the American Express and Elavon merchant accounts from the Hindu Temple to the Shiva Vishnu Temple. See id. at 1220-21. The trustee asserted that if Mr. Annamalai provided services to others, the money for such services was his to keep as long as he{2019 U.S. App. LEXIS 18} was not "doing it under the auspices of the Hindu Temple of Georgia." Id. at 1205.

Significantly, the IRS investigator acknowledged that no funds in the merchant accounts of the Hindu Temple were moved or transferred to the Shiva Vishnu Temple. See id. at 1146, 1151. The receivables which formed the basis of the bankruptcy fraud charges in Counts 11-14 and 16-20 were for "new services" provided post-bankruptcy, and the receivables for those services went to the Shiva Vishnu Temple. See id. at 1154-55. In other words, the Shiva Vishnu Temple accepted payments for religious services it provided to followers after the Hindu Temple filed for bankruptcy. As the IRS investigator put it, it was "[n]ew money, new customers, new service, new bank account." Id. at 1157, 1160-61.

The trustee did not know the names of the followers who made payments on their credit cards to the Shiva Vishnu Temple. See id. at 1212-1213. He also did not know whether any of them believed that they were making payments to the Hindu Temple as opposed to the Shiva Vishnu Temple. See id. at 1213. The trustee opined that money that was due to the Hindu Temple "was diverted" to the Shiva Vishnu Temple, and if so it "may have been [the bankruptcy estate's] money," but he admitted that he did not "know that for{2019 U.S. App. LEXIS 19} a fact." Id. Indeed, when asked how he knew that someone in October of 2010 was using the name of the Hindu Temple to elicit post-bankruptcy credit card payments from followers, the trustee said he did not "know that" and could not "prove that." Id. at 1214.

In January of 2010, Kumar Chinnathambi, Mr. Annamalai's co-conspirator, deposited a $3,000 check-made out to the Hindu Temple of Georgia as a donation-into the bank account of the Shiva Vishnu Temple without the trustee's knowledge or consent. See D.E. 386 at 1127. The trustee testified that he never spoke to the donors and therefore did not know "what was on their minds" when they issued the check, id. at 1211, and the donors did not testify at trial. The government called an agent to testify about the donation check, and he described the check, noting the account in which it was deposited and who deposited it. See id. at 1127-28, 1172-73.

**B**

As noted earlier, 18 U.S.C. § 152(1) prohibits knowingly and fraudulently concealing from a bankruptcy trustee (and certain other persons) "any property belonging to the estate of a debtor." The elements of a § 152(1) offense in a {939 F.3d 1228} Chapter 11 context are (1) the existence of a bankruptcy proceeding; (2) the existence of property belonging to the bankruptcy estate;{2019 U.S. App. LEXIS 20} and (3) the defendant's knowing and fraudulent concealment of that property from the trustee, custodian, marshal, or other officer of the court charged with custody and control of that property. See United States v. Spurlin, 664 F.3d 954, 960 (5th Cir. 2011); United States v. Wagner, 382 F.3d 598, 607 (6th Cir. 2004). With these elements in mind, we address whether the government proved that the post-petition receivables of the Shiva Vishnu Temple charged in Counts 11-14 and 16-20 and the $3,000 donation check charged in Count 15 constituted property of the bankruptcy estate of the Hindu Temple.

As a general matter, "[w]hether property is part of the bankruptcy estate is a factual issue for the jury." United States v. Dennis, 237 F.3d 1295, 1300 (11th Cir. 2001). Here, however, the evidence was insufficient as a matter of law as to the substantive bankruptcy fraud charges in Counts 11-20 because the post-petition receivables of the Shiva Vishnu Temple and the $3,000 donation check were not the property of the bankruptcy estate of the Hindu Temple. Whatever wrongs Mr. Annamalai may have committed with respect to those receivables and the donation check did not constitute bankruptcy fraud on the evidence presented.

The Bankruptcy Code, in 11 U.S.C. § 541(a), defines what property interests comprise the bankruptcy estate. See 5 Collier on Bankruptcy ¶ 541.03 (16th ed. 2019). The{2019 U.S. App. LEXIS 21} government

only relies on subsections (a)(1) and (a)(6), see Gov't Br. at 39-40, so we do not address subsections (a)(2)-(5) or (7).

We begin with § 541(a)(1), which provides that the bankruptcy estate consists of "all legal and equitable interests of the debtor in property as of the commencement of the [bankruptcy] case." 11 U.S.C. § 541(a)(1) (emphasis added). While state law generally creates and defines property interests, see Butner v. United States, 440 U.S. 48, 55, 99 S. Ct. 914, 59 L. Ed. 2d 136 (1979), the bankruptcy estate "succeeds only to those interests that the debtor had in property prior to the commencement of the bankruptcy case." In re FCX, Inc., 853 F.2d 1149, 1153 (4th Cir. 1988) (emphasis added). Due to this textual temporal limitation, the bankruptcy estate under § 541(a)(1) "is determined at the time of the initial filing of the bankruptcy petition[.]" In re Majestic Star Casino, LLC, 716 F.3d 736, 751 (3d Cir. 2013) (quotation omitted). This has been our understanding for some time. See Ford, Bacon & Davis, Inc. v. Holahan, 311 F.2d 901, 902 (5th Cir. 1962) (addressing § 70(a) of the former Bankruptcy Act: "[T]he determination of what property vests in the trustee is made as of th[e] date [on which the petition is filed.]"); Curtis v. Humphrey, 78 F.2d 73, 74 (5th Cir. 1935) ("Any right the trustee had became fixed as of the date the bankruptcy petition was filed[.]"). Because the receivables charged in Counts 11-14 and 16-20 and the donation check charged in Count 15 did not exist in August of 2009, when the Hindu Temple filed for bankruptcy, they were not part of the{2019 U.S. App. LEXIS 22} estate under § 541(a)(1).

The post-bankruptcy receivables were in fact payments for "new services" provided to followers by the Shiva Vishnu Temple after the Hindu Temple filed for bankruptcy. See D.E. 386 at 1154-55, 57. Those services simply were not provided by the Hindu Temple, which did no more business after the trustee shut it down in early November of 2009, or its estate. Further, the trustee and the IRS investigator testified (correctly in our view) that nothing prevented Mr. Annamalai-who was not the debtor-from opening a new temple {939 F.3d 1229} like the Shiva Vishnu Temple and providing religious services to followers after the Hindu Temple filed for bankruptcy. See BBeautiful v. Rieke-Arminak Corp. (In re BBeautiful), No. 2:16-bk-10799-ER, 2017 Bankr. LEXIS 615, 2017 WL 932945, at *5 (Bankr. C.D. Cal. Mar. 8, 2017) (explaining that new post-bankruptcy business relationships established by the principal of the corporate debtor did not constitute property of the estate).

We recognize that the trustee opined that the post-petition receivables of the Shiva Vishnu Temple belonged to the estate. That opinion, however, amounted to an incorrect and unsupported legal conclusion. Cf. Diversified Fiber Prods. v. United States (In re Thena, Inc.), 190 B.R. 407, 412 (D. Oregon 1995) ("Chapter 11 does not permit the estate's inclusion of property that did not exist at the time of filing, for the debtor's beneficial, equitable{2019 U.S. App. LEXIS 23} use. . . . Congress promulgated Chapter 11 to protect, rather than enhance, the debtor's estate.").

Take Count 20, which involved receivables processed and received by the Shiva Vishnu Temple on October 25, 2010, over 13 months after the Hindu Temple filed for bankruptcy and about 11 months after the trustee shut its doors. In its closing argument, the government told the jury that all of the funds generated by the Shiva Vishnu Temple constituted property of the bankruptcy estate of the Hindu

Page no___4____

Temple, no matter how much time passed, "because the bankruptcy was still pending." D.E. 390 at

2093. But the ongoing nature of a bankruptcy proceeding does not, by itself, dictate whether something is or is not property of the estate. If the government's theory concerning property of the estate were correct, the temporal limitation set out in the text of § 541(a)(1) (i.e., "as of the commencement of the [bankruptcy] case") would be rendered illusory. We decline the invitation, express or implied, to depart from the statutory language.2

The bankruptcy estate also encompasses "proceeds, product, offspring, rents, or profits of or from property of the estate." 11 U.S.C. § 541(a)(6) (emphasis added). Contrary to the government's suggestion,{2019 U.S. App. LEXIS 24} there is insufficient evidence to show that the post-bankruptcy receivables fell within § 541(a)(6). The "Bankruptcy Code takes an estate's constituent property interests as it finds them," In re Northington, 876 F.3d 1302, 1314 (11th Cir. 2017), and the government did not prove or explain (or cite any authority to support) how the estate (and everything it comprised at the time of filing) generated these post-bankruptcy receivables. See In re Bracewell, 454 F.3d 1234, 1245 (11th Cir. 2006) (explaining that under § 541(a)(6) the "proceeds must be 'of or from the property of the estate'"). The merchant accounts, even assuming they were property of the estate, were used to process the credit card payments but not to generate them.

Likewise, the government made no attempt to demonstrate that the $3,000 donation check was generated by property of the bankruptcy estate under § 541(a)(6). See In re Bracewell, 454 F.3d at 1245. Once the bankruptcy trustee shut down the Hindu Temple, it stopped serving followers. At no point, however, did the government attempt to connect the check to property of the Hindu Temple's bankruptcy estate. The agent who testified about the check at trial only related who the check was made out to, the account in {939 F.3d 1230} which it was deposited, and who deposited it. The donors of the $3,000 check did not testify, and absent any other evidence{2019 U.S. App. LEXIS 25} from the government-as far as we can tell none was presented at trial-the jury could not find that the donation check was a proceed, product, offspring, rent, or profit generated from some activity performed by the estate or its property.

We again acknowledge the testimony of the trustee, who believed that "assets coming into the bankruptcy entity become property of the estate," and that, as a result, the donation check was property of the estate. See D.E. 386 at 1187-88. But that opinion is not evidence that the donation was in fact a proceed, product, offspring, rent, or profit "of or from property of the estate." Because the post-petition check was not part of the estate, Mr. Annamalai could not be convicted of bankruptcy fraud for misappropriating it.3

We address two other possible theories. At the end of the day, they also fail.

First, we realize that in the trustee's view all of the merchant accounts of the Hindu Temple were property of the bankruptcy estate, and that Mr. Annamalai failed to obtain his permission to modify

Page no   5

them, transfer them, or use them. We assume without deciding that this was indeed the case, cf. In re Thomas B. Hamilton, Inc., 969 F.2d 1013, 1018-21 (11th Cir. 1992) (discussing the nature of credit card merchant agreements in the{2019 U.S. App. LEXIS 26} context of a corporate bankruptcy), but this assumption does not save the bankruptcy fraud convictions. The insurmountable difficulty for the government is that Counts 11-14 and 16-20 did not charge Mr. Annamalai with misappropriating the merchant accounts. They charged him with concealing specific receivables obtained by the Shiva Vishnu Temple on certain dates after the Hindu Temple filed for bankruptcy and stopped doing business. And, as noted earlier, the government's own evidence demonstrated that Mr. Annamalai never transferred to the Shiva Vishnu Temple any money in the merchant accounts belonging to the Hindu Temple.4

Second, to the extent that the government relies on the trustee's testimony that Mr. Annamalai acted improperly by calling his new temple the Shiva Vishnu Temple when that name had been an alternative name of the Hindu Temple, that reliance is misplaced. Simply stated, Mr. Annamalai was not charged in Counts 11-14 and 16-20 with misappropriating the Shiva Vishnu Temple name.

C

At trial, the IRS investigator testified that the Hindu Temple and the Shiva Vishnu Temple were the same business, and the government told the district court that it considered the Shiva Vishnu{2019 U.S. App. LEXIS 27} Temple to be the alter ego of the Hindu Temple. See D.E. 386 at 1116-17. At closing argument, the government asserted that Mr. Annamalai was "using the same business," including the "good will of the Hindu Temple," to run the Shiva Vishnu Temple. See D.E. 390 at 2090. He was, in other words, "continuing the business." Id. at 2093. On appeal the government defends the bankruptcy {939 F.3d 1231} fraud convictions on a similar alter ego theory, see Gov't Br. at 40-41, but due to the way this case was tried the theory is fatally flawed.

The government seems to believe that the Hindu Temple and its bankruptcy estate were one and the same, so that any continuation of the Hindu Temple's business by the Shiva Vishnu Temple is necessarily equated with the estate and all it comprised. That belief, however, is based on a misunderstanding of bankruptcy law. A Chapter 11 estate, which is created by the filing of a bankruptcy petition, is separate and distinct from the corporate debtor, which "continues to exist as a legal entity after the filing of [the] petition, whether under [C]hapter 7 or 11[.]" 5 Collier on Bankruptcy ¶ 541.02 (16th ed. 2018). See also Indian Harbor Ins. Co. v. Zucker, 860 F.3d 373, 378 (6th Cir. 2017) ("Capitol's bankruptcy . . . created a new legal entity that is{2019 U.S. App. LEXIS 28} distinct from Capitol itself: the bankruptcy estate."). This misunderstanding is not necessarily fatal to the government's alter ego theory, but neither is it a good starting point.

In other bankruptcy contexts, one who seeks to pierce the corporate veil or disregard the corporate form must proceed under state law. See, e.g., Baillie Lumber Co. v. Thompson, 391 F.3d 1315, 1321-23 (11th Cir. 2004) (certifying to the Georgia Supreme Court the question of whether a bankruptcy trustee

Page no___6___ 

for a corporate debtor can assert an alter ego claim against the corporation's former principal); In re

ACME Sec., Inc., 484 B.R. 475, 478-95 (Bankr. N.D. Ga. 2012) (addressing the question of successor liability in a corporate bankruptcy under Georgia law). We see no reason why a different rule should apply here. The government apparently recognizes the need to satisfy state law, as it cites a case from the Georgia Supreme Court on disregarding the corporate form. See Gov't Br. at 40-41 (citing Baillie Lumber Co. v. Thompson, 279 Ga. 288, 612 S.E.2d 296, 298 (Ga. 2005)).

The problem, as we see it, is that the jury was not instructed on any alter ego theory of any kind. It was not, for example, told what Georgia law requires to establish that one entity (i.e., the Shiva Vishnu Temple) is the alter ego of another (i.e., the Hindu Temple or the bankruptcy estate). See D.E. 391 at 2150-78. So, even if we assume that an{2019 U.S. App. LEXIS 29} alter ego theory can be used to bring post-bankruptcy-generated income earned by a separate corporate entity back into a Chapter 11 estate-an issue that apparently no court has ever decided and one which we decline to address-the assumption is of no help to the government. In a criminal case like this one, where the government's burden is to prove guilt beyond a reasonable doubt, we cannot affirm Mr. Annamalai's bankruptcy fraud convictions on Counts 11-20 on a theory of liability not presented to the jury. See McCormick v. United States, 500 U.S. 257, 270 n.8, 111 S. Ct. 1807, 114 L. Ed. 2d 307 (1991) ("[T]he Court of Appeals affirmed [the defendant's] conviction on legal and factual theories never tried before the jury. . . [F]or that reason alone . . . the judgment must be reversed."); Jackson v. Virginia, 443 U.S. 307, 314, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) ("It is axiomatic that a conviction upon a charge not made or a charge not tried constitutes a denial of due process."). The convictions on Counts 11-20 are reversed.

**D**

At trial and on appeal, the government presented a theory of the case that relied on the same acts and evidence to prove both substantive bankruptcy fraud and conspiracy to commit bankruptcy fraud. In other words, the substantive bankruptcy fraud charges in Counts 11-20 formed the {939 F.3d 1232} basis for the illegal agreement and the overt{2019 U.S. App. LEXIS 30} acts for the conspiracy to commit bankruptcy fraud charged in Count 10. See, e.g., D.E. 390 at 2093 (explaining at closing argument that "[t]he opening of this [new Shiva Vishnu bank] account" and the "diverting of the credit card receipts" were the overt acts in furtherance of the alleged conspiracy); D.E. 227 at 5 (relying, in opposition to the Rule 29 motion for judgment of acquittal, on the same acts to demonstrate that there was sufficient evidence to prove both the substantive counts of bankruptcy fraud and the conspiracy to commit bankruptcy fraud); Gov't Br. at 36-38 (same).

Having held that the evidence was insufficient to sustain the convictions for the substantive bankruptcy fraud charges, we necessarily conclude that the evidence was likewise insufficient to sustain the conviction for conspiracy to commit bankruptcy fraud because the alleged illegal agreement did not involve property of the Hindu Temple's bankruptcy estate. The government did not present evidence of

a separate agreement to conceal other property of the estate or any other overt acts in furtherance of such an agreement. We therefore reverse Mr. Annamalai's Count 10 conviction for conspiracy to commit bankruptcy{2019 U.S. App. LEXIS 31} fraud.

**IV**

Mr. Annamalai challenges his convictions on Counts 21-30, which charged him with money laundering in violation of 18 U.S.C. § 1956. As relevant here, that statute prohibits certain transfers of money derived from specified unlawful activities, including bankruptcy fraud. See 18 U.S.C. § 1956(c)(7)(D).

Each of the money laundering charges was predicated on proceeds generated from the specified unlawful activity of bankruptcy fraud. See D.E. 86 at ¶ 32. Because we have reversed all of Mr. Annamalai's convictions for substantive bankruptcy fraud and conspiracy to commit bankruptcy fraud due to insufficient evidence, there are no specified unlawful activities which provide a basis for the money laundering charges. We therefore reverse all of Mr. Annamalai's money laundering convictions.

**V**

Mr. Annamalai contends, as he did in the district court, see D.E. 389 at 1796, that there was insufficient evidence to support his conviction on Count 34 for conspiring to harbor a fugitive in violation of 18 U.S.C. §§ 1071 and 371. We agree.

**A**

To prove a conspiracy under § 371, the government must prove that there was an agreement "between two or more persons to commit a crime," that the defendant "knowingly and voluntarily joined or participated in the unlawful{2019 U.S. App. LEXIS 32} agreement," and that "a conspirator performed an overt act in furtherance of the unlawful agreement." United States v. Duenas, 891 F.3d 1330, 1334 (11th Cir. 2018). The "fundamental characteristic of a [§ 371] conspiracy is a joint commitment to an 'endeavor which, if completed, would satisfy all of the elements of [the underlying substantive] criminal offense.'" Ocasio v. United States, 136 S. Ct. 1423, 1429, 194 L. Ed. 2d 520 (2016) (quoting Salinas v. United States, 522 U.S. 52, 65, 118 S. Ct. 469, 139 L. Ed. 2d 352 (1997)). So, in order to determine whether the evidence was sufficient to convict Mr. Annamalai of violating § 371, we must first consider the elements of § 1071, the object of the charged conspiracy.

As relevant here, § 1071 makes it a federal crime to

{939 F.3d 1233} harbor[ ] or conceal[ ] any person for whose arrest a warrant or process has been issued under the provisions of any law of the United States, so as to prevent his discovery and arrest, after notice or knowledge of the fact that a warrant or process has been issued for the apprehension of such person[.]As a number of other circuits have explained, a straightforward reading of this statutory text establishes the following elements: (1) a federal warrant was issued for a person's arrest; (2) the defendant knew about that warrant; (3) the defendant harbored or concealed that person; and (4) the

**Page no___8_____**

defendant did so with the intent to prevent that person's arrest{2019 U.S. App. LEXIS 33} or discovery.

See United States v. Stegmeier, 701 F.3d 574, 578 (8th Cir. 2012); United States v. Hill, 279 F.3d 731, 737-38 (9th Cir. 2002); United States v. Lockhart, 956 F.2d 1418, 1422-23 (7th Cir. 1992); United States v. Silva, 745 F.2d 840, 848 (4th Cir. 1984). These decisions are consistent with one of our early § 1071 cases. See Blankenship v. United States, 328 F.2d 19, 19 (5th Cir. 1964) (upholding the § 1071 conviction of a defendant who "concealed and harbored his brother, knowing that he was a fugitive and that a felony warrant had been issued for his arrest"). See also United States v. Deaton, 468 F.2d 541, 544-45 (5th Cir. 1972) (holding that transporting, finding, and securing lodging for escapees constituted "harboring" under 18 U.S.C. § 1072, which prohibits the willful harboring or concealing of a federal prisoner after his escape).

Importantly, § 1071 "does not proscribe all forms of aid to a fugitive and . . . the actual harboring or concealing element requires some affirmative, physical action by the defendant." United States v. Zabriskie, 415 F.3d 1139, 1145 (10th Cir. 2005) (quotations omitted). Accord Stegmeier, 701 F.3d at 579; United States v. Mitchell, 177 F.3d 236, 239 (4th Cir. 1999); United States v. Green, 180 F.3d 216, 220 (5th Cir. 1999); Lockhart, 956 F.2d at 1423; United States v. Stacey, 896 F.2d 75, 76-77 (5th Cir. 1990). In the words of the Second Circuit, "harbor" and "conceal" are "active verbs, which have the fugitive as their object," and they refer to "some physical act tending to the secretion of the body of the offender." United States v. Shapiro, 113 F.2d 891, 892-893 (2d Cir. 1940) (discussing the predecessor to § 1071). See also Black's Law Dictionary 831 (10th ed. 2014) (defining "harboring" as "[t]he act of providing lodging, shelter, or refuge to a person, esp. a criminal or illegal alien," and "harboring a fugitive" as "[t]he crime of affording lodging, shelter, refuge, or{2019 U.S. App. LEXIS 34} other aid to a person seeking avoid capture or punishment").

A comparison of § 1071 cases helps to explain generally what is and is not prohibited. Cases affirming convictions include United States v. Hayes, 518 F.3d 989, 994 (8th Cir. 2008) (not opening the door of the place where the fugitive was hiding for over an hour after agents arrived on the scene); Lockhart, 956 F.2d at 1423 (allowing a fugitive to live on the defendant's lot and hiding his car); Stacey, 896 F.2d at 76-77 (closing and locking the door of the place where a fugitive was hiding to prevent his arrest by deputy marshals who had seen him); United States v. Arguelles, 594 F.2d 109, 111 (5th Cir. 1979) (purchasing cars together with a fugitive, making repairs to cars in the defendant's name but with the fugitive paying for them, and living together with the fugitive and making some rent payments); and United States v. Whitman, 480 F.2d 1028, 1030 (6th Cir. 1973) (renting a cabin so that it could be used by a fugitive on the run). Cases reversing convictions include United States v. Hogg, 670 F.2d 1358, 1361-62 (4th Cir. 1982) (making a potentially misleading statement about a car {939 F.3d 1234} that the defendant suspected was stolen by a fugitive), and Shapiro, 113 F.2d at 893 (making weekly payments to a fugitive: "To pay money to a fugitive so that he may shelter, feed or hide himself is not within the accepted meanings of to 'harbor or conceal' him."). Some courts draw a distinction "between paying money to a fugitive so that he may shelter,{2019 U.S. App. LEXIS 35} feed or hide himself, which is not harboring, and providing that shelter, food, or aid directly, which is harboring." Hill, 279 F.3d at 738

Page no____9____

(internal quotations omitted). See also United States v. Lanier, 879 F.3d 141, 148 (5th Cir. 2018) ("provid[ing the fugitive] with a revenue stream that funded his life on the lam" does not "qualify as harboring").

**B**

The indictment charged Mr. Annamalai with conspiring, from November of 2013 to April of 2014, to harbor and conceal his fugitive business partner, Mr. Chinnathambi, for whom an arrest warrant had been issued. The other alleged members of the conspiracy were Parvathi Sivanadiyan (Mr. Annamalai's wife) and Mr. Chinnathambi himself. See D.E. 86 at ¶ 37.

According to the indictment, on November 15, 2013, Mr. Chinnathambi purchased one-way airline tickets for flights the next day from Orlando, Florida, to Chennai, India, via Chicago, Illinois, and Hong Kong. He traveled from Orlando to Chicago but did not board the flight to Hong Kong. See id. at ¶ 41. On November 16, 2013, Mr. Annamalai-after his own arrest and while detained-had a conversation with his wife. During this conversation, he instructed her to tell someone named "Sheshamani" (an alias for Mr. Chinnathambi) that he "should use cash and not a debit card."{2019 U.S. App. LEXIS 36} Id. at ¶ 42. Later that same day, his wife sent an e-mail to Mr. Chinnathambi instructing him "to use cash." Id. at ¶ 43.

Several months later, Mr. Annamalai's wife spoke to federal agents. She falsely told them that she did not have contact with Mr. Chinnathambi since her husband's arrest; that she never sent an e-mail to Mr. Chinnathambi and did not know his e-mail address; and that she did not have a telephone number for Mr. Chinnathambi. See id. at ¶ 44.

The evidence at trial, as was to be expected, tracked the allegations in the indictment. See, e.g., D.E. 387 at 1403-11. But the evidence, like the indictment, did not make out an unlawful agreement to violate § 1071.

As explained above, § 1071 requires some affirmative physical act to help harbor or conceal a person for whom a warrant has been issued. A § 371 conspiracy to violate § 1071 therefore requires an agreement or understanding that one or more of the conspirators will commit such an act. See Ocasio, 136 S. Ct. at 1429. There was no such agreement here.

First, Mr. Annamalai's instruction to Ms. Sivanadiyan that she tell Mr. Chinnathambi to use cash and not a debit card, and her compliance with that instruction, are insufficient. We can find no cases holding that the mere{2019 U.S. App. LEXIS 37} giving of advice to a fugitive, without providing some sort of material or physical assistance, constitutes harboring or concealing within the meaning of § 1071. An agreement to provide such advice therefore is not an agreement to violate § 1071. The government, tellingly in our view, does not cite any § 1071 cases or other authorities to support its sufficiency argument on this theory. Cf. Piquett v. United States, 81 F.2d 75, 81 (7th Cir. 1936) (agreeing to alter a fugitive's "facial features and finger lines" suffices to constitute a conspiracy to harbor and conceal a fugitive).

{939 F.3d 1235} Second, Ms. Sivanadiyan's false statements to the agents about Mr. Chinnathambi and his whereabouts also do not constitute harboring or concealing. The decisions from our sister circuits, which we find persuasive, make that clear. See Stacey, 896 F.2d at 76-77 ("Failure to disclose a fugitive's location and giving financial assistance do not constitute harboring[.]"); United States v. Magness, 456 F.2d 976, 978 (9th Cir. 1972) ("[A] false statement, standing alone, . . . could not constitute the active conduct of hiding or secreting contemplated by the statute."); United States v. Foy, 416 F.2d 940, 941 (7th Cir. 1969) ("[W]e do not think that a failure to disclose the location of a fugitive is the type of assistance contemplated by 'harbor and conceal' as used in § 1071.").

Third, we are not persuaded by the government's{2019 U.S. App. LEXIS 38} reliance on the airline tickets that Mr. Chinnathambi purchased (and partially used). The government says that the tickets show that Mr. Chinnathambi sought to flee the United States. See Gov't Br. at 53. The jury easily could have found as much, but even so, the evidence on Count 34 was legally insufficient. For starters, the trip took place before Mr. Annamalai instructed his wife to tell "Sheshamani" to use cash. But even if the alleged conspirators had previously agreed about the trip, the flight-with tickets Mr. Chinnathambi purchased himself-did not constitute the harboring or concealing of him by Mr. Annamalai and his wife. We have not located any cases or authorities to the contrary, and the government has not pointed us to any. Congress knows when to make flight from arrest or prosecution a federal offense, see, e.g., 18 U.S.C. § 1073, and it did not use the word flight in § 1071. And even if we assume, contrary to cases like Shapiro, that providing money to a fugitive can sometimes be sufficient to convict under § 1071, there is no any evidence (direct or circumstantial) that Mr. Annamalai or his wife provided (or agreed to provide) the funds used by Mr. Chinnathambi to purchase the airline tickets.{2019 U.S. App. LEXIS 39}

In sum, we decline to make § 1071 "a catchall to make crimes out of actions which law-enforcement] agents may feel to be undesirable, but which Congress has not seen fit to prescribe." Miller v. United States, 230 F.2d 486, 488 (5th Cir. 1956) (discussing the scope of 18 U.S.C. § 1501). Whatever the agreement between Mr. Annamalai, his wife, and Mr. Chinnathambi, it was not an agreement to violate § 1071 by harboring or concealing the latter. The conviction on Count 34 is reversed. "



AUG 22 2019

**Clerk of the
Vigo Circuit Court**

STATE OF INDIANA
VIGO SUPERIOR COURT
DIVISION 2
2019 TERM

CAUSE NO. 84D02 1704 MI 2768

ANNAMALAI ANNAMALAI,
        Plaintiff

    Vs.

VISHAL KALYANI,
VISHAL KALYANI,
        Defendants

### ORDER APPOINTING SPECIAL JUDGE

    This matter having been certified to the presiding judge of Administrative
District 19 for appointment of a Special Judge, the Honorable <u>Charles D. Bridges</u> is
hereby appointed to assume jurisdiction in this matter.

    **ALL IS SO ORDERED** this _14_ day of _August_, 2019.

                          _____
           **ROBERT E. HUNLEY II**, PRESIDING JUDGE
           OF ADMINISTRATIVE DISTRICT 19

Distribution:
Vigo Superior, Div 2
Hon. Charles D. Bridges
Parties

**SEAL**
VIGO COUNTY INDIANA
CIRCUIT & SUPERIOR COURTS

Exhibit # 6-1

11/16/2020 11:27 AM Scanned

STATE OF INDIANA                    VIGO SUPERIOR COURT #2

COUNTY OF VIGO              SS      2020 TERM

                                    CAUSE No. 84D02-17-4211T-2767

ANNAMALAI ANNAMALAI

        - Plaintiff

VS.

VISHAL KALYANI

        - Defendant

                    ORDER

    The Court Finds For the Plaintiff Fairs to EXECUTE the

Final Judgement. ALL the ACCOUNT DEbtors who has already

admitted as "Panny-In-Privity", Pursuant to INDIANA Trial Rule

36 (b) SHALL Specificaly Perform all the acts as per

their respective admissions at this Proceedings

ALL OF WHICH IS ORDERED by the Court, this 9th

day of November 2020

                                    Honorable Charles D Bird

                                    SPecial Judge Vigo Superior Court #2

DISTRIBUTION:

Plaintiff

Defendant

                                    Exhibit # 7

                                    EX-7

**STATE OF** INDIANA)

**COUNTY OF** VIGO ) SS

I, Bradley M. Newman, Clerk of the Vigo Circuit Court and Ex-
officio Clerk of the Superior and County Courts of Vigo County, do hereby
certify that this document is a full, true and complete copy of

*ORDER*

Cause No   84D02-1704-MI-2768

As the same appears of record in the files of this office of which I am legal
and lawful custodian

IN WITNESS WHEREOF, I have hereunto set my hand and

official seal, this the _13_ day of _January_ 2021

**CLERK OF THE VIGO CIRCUIT COURT AND
EX-OFFICIO CLERK OF THE SUPERIOR AND
COUNTY COURTS OF VIGO COUNTY**

Exhibit - 7

STATE OF INDIANA                                    VIGO SUPERIOR COURT

COUNTY OF VIGO          SS:

                                        CAUSE No. XXXXX-79-CM-2768

ANNAMALAI ANNAMALAI
      Plaintiff

VS

VISHAL KALYANI


                    ORDER

The court hereby find for the Plaintiff, the appearance for a

proceedings supplemental hearing(s)

ALL OF WHICH IS ORDERED by the court this 9th day of

November 2020



                                        Honorable James S.

                                        Special Judge Vigo Superior Court



DISTRIBUTION:

Plaintiff

Defendant

STATE OF INDIANA
COUNTY OF VIGO  SS

Exhibit 7

Exhibit 7

12.10.2016                          MEMORANDUM OF RECORD

                                    I N V O I C E #
                                    AvT-VK-0049

Account Debtor(s)

Richard D.Fairbank
C/O  1680 Capital one Drive
McLean, Virginia 22101-3491

&

CAPITAL ONE BANK ( USA ) N.A.
C/O 1680 Capital One drive
McLean, Virginia 22101-3491

Billed/Invoiced for:

Breach of contract, Usage of Trade Secrets
belonging to Annamalai Annamalai, common law
fraud , constructive fraud, intentional infliction
of emotional distress                                        375,000,000.00

Total amount due within 30 days                              375,000,000.00

A late interest of 21% will be charged for all the
late payments. This invoice/bill is severally and cr
collectively responsible by the account debtor(s)

                              by:  _____
                                   Annamalai Annamalai
                                   P.O.Box-33
                                   Terre haute
                                   Indiana 47808-0033

Wanda S Wright
8/24/20

NOTARY PUBLIC
WANDA S WRIGHT
My Commission Expires
05-14-2021
HENRY COUNTY, GEORGIA

EXhibit #8

**FILED**
VIGO COUNTY SUPERIOR COURT

NOV 12 2019

CLERK



WANDA S WRIGHT
MY Commission Expires
NOTARY
PUBLIC
05-14-2021
HENRY COUNTY, GEORGIA

Wanda S Wright
9/14/20

Exhibit #8

SWAMIJI SRI SELVAM SIDDHAR
HINDU HIGH PRIEST
SIDDHAR PEEDAM GROUP OF TEMPLES
ADMINISTRATIVE OFFICE:
OLD # 48 New # 61 SATHYAMOORTHI ROAD
THIRD FLOOR COIMBATORE-641009 INDIA
E-mail: avtemple@aol.com Web: www.siddharpeedam.org

DATE:  12.10.2016

**I N V O I C E**

OM NAMASHIVAAYAA!!

<u>M E M O R A N D U M  OF  R E C O R D</u>

I N V O I C E   N U M B E R:  <u>AvT – VK – 0049</u>

Account Debtor(s):-[1]

**Richard D. Fairbank**                                   **CAPITAL ONE SERVICES LLC**
**CAPITAL ONE BANK (USA) N.A.**              C/O 1680 Capital one drive
**1680 Capital One drive**                           Mclean, VA-22101-3491
**Mclean, Virginia-22101-3491**

## Billed/invoiced for:-

(1). Partial compensatory damages for Injury In fact suffered by
Mr. Annamalai, because of Mr. Richard D. Fairbank, who has caused to falsify
One of his businesses " as a FDIC insured financial institution,
to secure a *"wrongful conviction"* of Mr.Annamalai for an alleged bank fraud………………………..  $5 Billion US Dollar

(2). Irreparable harms for Annamalai and also  his business, which were caused by
 Mr. Richard D .Fairbank, and also by his associates, per their continuing "RICO"
 predicate acts, *"inclusive"* of Mail fraud, wire Fraud, theft & misappropriation of
 Trade Secrets belonging to Mr. Annamalai, and his monastery Siddhar Peedam
Group of Temples……………………………………………………………………………………4 Billon U S Dollar

**Total invoice**……………………………………………………………………………….....**$9 Billion U.S. Dollar**

Swamiji Sri Selvam Siddhar (High Priest)
AKA: Annamalai Annamalai
Siddhar Peedam Group of Temples
w w w . s i d d h a  r p e e d a m . o r g .

---

[1] **Note: -** Please be advised that, this invoice is about your pending debts as shown above herein as per my records.
Your invoice is due within 30 days from the date of this invoice. A late payment of 21% per year will be added to
your debt, if this invoice is not paid within 30 days from the date of the invoice as shown in this invoice. (3). The
account debtors are jointly and severally responsible for this invoice. If you need a payment plan, please contact the
Siddhar Peedam group of Temples "only "via by email to "avtemple@aol.com" and discuss with your options of
payments and settlement with the "Head Chief priest" cum "chief of staffs" Priest Manikaanan Govindakutty.

Exhibit #9



PURPLE HEART
FOREVER USA

Amalai Ammamai
~obert A. Deaton Detention facility
Hastings bridge Road
Box-730
Joy, Georgia-30250

U.S. MARSHAL
INSPECTED

To: The clerk of court
United States Bankruptcy court
200 South Washington Street
Alexandria
Virginia - 22314

Mailed from a detention facility